**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**FREDERICK W. MILLER,**

                              **Plaintiff,**

         v.                                          **7:05-CV-1371**
                                                     **(FJS/GJD)**

**COMMISSIONER OF SOCIAL SECURITY,**

                              **Defendant.**
_____

**APPEARANCES**                          **OF COUNSEL**

**CONBOY, MCKAY, BACHMAN**                **LAWRENCE D. HASSELER, ESQ.**
**& KENDALL, LLP**
407 Sherman Street
Watertown, New York 13601
Attorneys for Plaintiff

**OFFICE OF THE UNITED**                  **WILLIAM H. PEASE, AUSA**
**STATES ATTORNEY**
100 South Clinton Street
P.O. Box 7198
Syracuse, New York 13261-7198
Attorneys for Defendant

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

Plaintiff filed an application for disability insurance benefits on May 24, 2004, alleging

that he became disabled on November 12, 2003.  *See* Administrative Transcript ("Tr.") at 47-49.

Plaintiff's application was initially denied.  *See id.* at 26.  Plaintiff requested a hearing before an

Administrative Law Judge ("ALJ"), which was held on February 18, 2005, before ALJ Elizabeth

W. Koennecke.  *See id.* at 181-203.  On June 10, 2005, the ALJ issued a decision denying

Plaintiff's application for disability benefits. *See id.* at 10-20. The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review on September 9, 2005. *See id.* at 4-6.

On October 31, 2005, Plaintiff commenced this action pursuant to 42 U.S.C. § 405(g) for judicial review of that final decision. In support of his argument that the Court should reverse Defendant's decision and award him benefits, Plaintiff asserts that (1) the Commissioner failed to consider the medical evidence of record properly; (2) the Commissioner failed to assess the severity of Plaintiff's conditions properly; (3) the Commissioner failed to calculate Plaintiff's residual functional capacity ("RFC") properly; (4) there was no substantial evidence to support the Commissioner's conclusion that there was significant work in the national economy that Plaintiff could perform; and (5) the ALJ failed to consider Plaintiff's credibility properly. *See* Plaintiff's Brief at 3-22.

To the contrary, Defendant contends that there is substantial evidence in the record to support the ALJ's decision and that, therefore, the Court should dismiss Plaintiff's complaint. *See generally* Defendant's Brief.

## II. BACKGROUND

**A.     Personal history**

Plaintiff was fifty-one years old at the time of the administrative hearing. *See* Tr. at 185. Plaintiff had obtained his high school degree, *see id.* at 186, and had past relevant work experience as a mechanic's helper and as a heavy equipment operator, *see id.* at 187. Plaintiff alleged disability due to degenerative disc disease and arthritis. *See id.* at 53.

-2-

**B.     Medical evidence in the record**

***1. Gary Berk, M.D.***

From December 5, 1995, to March 7, 2005, Plaintiff saw Gary Berk, M.D., a family

practitioner.  *See* Tr. at 92-109, 148-54, 174-80.  Plaintiff initially complained about joint pain in

his right elbow, shoulders, and right knee.  *See id.* at 96.  Plaintiff received instructions about

how to perform shoulder rehabilitation exercises and received prescriptions for various

medications.  *See id.*  An x-ray of Plaintiff's right knee was unremarkable, but an MRI showed

possible subarticular cartilaginous damage and a possible small medial meniscal tear.  *See id.*

However, Dr. Berk found that Plaintiff's knee pain was "much better . . . and progressively

improving."  *See id.*

Plaintiff subsequently complained about low back pain.  *See* Tr. at 98.  An MRI of

Plaintiff's lumbosacral spine performed on February 6, 2003, demonstrated multiple degenerative

disc disease and facet arthritic changes.  *See id.* at 105.  On July 2, 2003, Dr. Berk noted that

there "is a definite pattern of the pain being aggravated by his job [as a mechanic's helper]."  *See*

*id.*  Dr. Berk also noted that Plaintiff reported that there is a "provision in his job contract that

provides for early retirement if there is a disability involved, and he would like to apply for this,

though total time to completion may be 6-9 months."  *See id.*

On October 29, 2003, Dr. Berk noted that Plaintiff continued to experience low back pain

that radiated down his legs, which "occurs whenever he works at his job.  His symptoms improve

when he is at home off the concrete floors.  He has applied for early retirement because of the

disabling nature of this condition."  *See id.* at 106.

On November 10, 2003, Dr. Berk noted that Plaintiff complained about "an intolerable

flare of back pain due to work and cold weather." *See id.*  Dr. Berk placed Plaintiff on medical

leave through December 7, 2003.  *See id.*

On January 4, 2004, Dr. Berk noted that Plaintiff's "attempt to return to work brings about

a severe exacerbation of his back pain, which carries over into his daily activities." *See*  Tr. at

107.  Dr. Berk diagnosed Plaintiff as suffering from chronic degenerative disc disease and facet

arthritis "with recurrent aggravation from his work, causing chronic back pain." *See id.*  Dr. Berk

placed Plaintiff on medical leave through February 15, 2004, "to avoid further exacerbation of

his back pain." *See id.*

On February 4, 2004, Dr. Berk noted that Plaintiff "[c]ontinues to be disabled by his back

pain though the symptoms are improved since he has been off work." *See id.* at 108.  Dr. Berk

extended Plaintiff's medical leave until March 15, 2004, due to his severe back pain.  *See id.*

On April 29, 2004, Dr. Berk noted that Plaintiff continued to experience low back pain

with "discomfort radiating down the side of the right leg." *See id.*  Plaintiff stated that his pain

"flare[d] up whenever he start[ed] to do bending and lifting.  He has been unable to work because

of this." *See id.*  An MRI showed bulging discs and some nerve root impingement on the right

side at the L4-5 level.  *See id.*  Dr. Berk noted that Plaintiff's application for early retirement

based on disability was rejected, which "has caused him a lot of stress." *See id.*  On examination,

Plaintiff exhibited tenderness and spasm in his back, limited bending ability, and difficulty

performing a heel-and-toe walk.  *See id.*  Dr. Berk opined that Plaintiff was unable "to work full

time in a strenuous job that involves heavy lifting and bending." *See id.*  Dr. Berk extended

Plaintiff's medical leave for two months and encouraged Plaintiff to attend physical therapy "to

help improve his functional status while he is off work.  If he is unable to reverse the disabilities

-4-

decision he probably will have to go back to work and hopefully will be in optimal shape when he does so." *See id.* at 108-09.

On July 19, 2004, Dr. Berk noted that Plaintiff complained about continued back pain that limited his activities, particularly standing and sitting which he claimed he could perform "for about 30 minutes at a time." *See* Tr. at 149.  Dr. Berk extended Plaintiff's medical leave for two months.  *See id.*

On September 13, 2004, Dr. Berk noted that Plaintiff stated that he was able to tolerate more standing and sitting, "sometimes up to 2 hours." *See* Tr. at 150.  However, Dr. Berk noted that Plaintiff stated that any activity beyond minimal exertion caused significant aggravation of his back pain, but he was able to "stay comfortable" using medication and a TENS unit.  *See id.*  Dr. Berk extended Plaintiff's medical leave until October 25, 2004.  *See id.* at 151.

On October 25, 2004, Dr. Berk noted that Plaintiff stated that his back pain was "still very easily aggravated with minor activity" and that he was also "still limited with the time he [could] stand and sit." *See id.* at 152.  On examination, Plaintiff exhibited mild tenderness over the lumbar vertebrae without paraspinal muscle tenderness or spasm; normal sacroiliac ("SI") joints; full range-of-motion with minimal pain on terminal movements; and a negative straight leg raise test.  *See id.*  Dr. Berk extended Plaintiff's medical leave for three months.

On December 6, 2004, Dr. Berk noted that Plaintiff still had back pain and that he "still ha[d] to be careful around the house, though he [was] trying to be as active as possible.  He [was] still limited with the time he [could] sit and stand." *See id.* at 153.  On examination, Dr. Berk found mild tenderness over the lumbar vertebrae; mild paraspinal muscle; no spasming; little tenderness over the SI joints; full range-of-motion with minimal pain on terminal movements;

and a negative straight leg raise test.  *See id.*  He again extended Plaintiff's medical leave for

three months.  *See id.*  Dr. Beck noted that Plaintiff planned to start a light weight lifting program

as a physical therapist had directed.  *See id.*

On March 7, 2005, Dr. Berk noted that Plaintiff complained that his back "extremely

limited" him.  *See* Tr. at 180.  Plaintiff stated that his chronic low back pain

> flare[d] up after about 10 minutes of being up on his feet.  He ha[d]
> to sit and rest every 10 minutes when he d[id] household chores
> and a renovation project that he [was] completing [was] going very
> slowly . . . .  He frequently [had] discomfort in the neck and down
> both upper arms as well, which he related to his back problem.  He
> [was] currently trying to participate in a fitness program and
> hope[d] to become more functional in the future.

*See id.*

An examination of Plaintiff's back showed tenderness from L1 through L4 regions of the

spine and in the sciatic notch on the right side; the straight leg raising test was positive

bilaterally; and he exhibited "considerable" discomfort when bending forward and "severely

limited mobility of the spine in all directions."  *See id.*  Dr. Berk diagnosed Plaintiff as suffering

from chronic low back pain.  *See id.*  He found no functional improvement.  *See id.*

Also on March 7, 2005, Dr. Berk completed a medical Source Statement in which he

indicated that Plaintiff's impairments affected his abilities to lift and carry in that he was able to

lift and/or carry a maximum of ten pounds occasionally and had no ability to lift and/or carry

frequently.  *See* Tr. at 175.  Plaintiff's impairments affected his abilities to stand and/or walk as

well, in that Plaintiff was able to stand and/or walk a maximum of less than two hours in an

eight-hour workday.  *See id.*  Dr. Berk added that Plaintiff "need[ed] to rest every 10 minutes

while doing light work due to pain."  *See id.*  In addition, Plaintiff was able to sit a total of less

than about six hours in an eight-hour workday. *See id.* at 176. Dr. Berk also noted that Plaintiff

had limited abilities to push and pull. *See id.* Dr. Berk stated that he based the foregoing

findings on his examination of Plaintiff and Plaintiff's subjective complaints from the March 7,

2005 office visit. *See id.* Dr. Berk also indicated that Plaintiff should never perform certain

postural activities, was limited in certain manipulative activities, and had some environmental

limitations. *See id.* at 176-78.

### 2. Physical therapy

On February 17, 2003, Plaintiff started to attend physical therapy due to degenerative disc

disease and spinal stenosis. *See* Tr. at 110-15. Plaintiff's treatment was successful, and he was

discharged on March 31, 2003. *See id.* at 115.

On April 14, 2003, Plaintiff returned to physical therapy due to low back pain that started

on April 9, 2003, when he was "squatting and lifting a mounted tire at work." *See id.* at 119.

Plaintiff's treatment was successful, and he was discharged on May 21, 2003. *See id.* at 121-22.

On May 5, 2004, Plaintiff began another cycle of physical therapy to treat his low back

pain which radiated down his right leg. *See id.* at 125, 140-47. Plaintiff's treatment was mostly

successful, and he was discharged on June 25, 2004. *See id.* at 147.

### 3. Disability analyst

The record contains a Physical RFC Assessment form, dated July 1, 2004, which, it

appears J. Tiszler, a non-physician disability analyst, completed. *See* Tr. at 26, 134-39. The

analyst indicated that Plaintiff was capable of occasionally lifting and/or carrying a maximum of

twenty pounds; frequently lifting and/or carrying a maximum of ten pounds; standing and/or

walking for a total of about six hours in an eight-hour workday; sitting for a total of about six

hours in an eight-hour workday; and was limited in his abilities to push and pull.  *See id.* at 135.

The analyst also indicated that Plaintiff was able to perform certain postural activities only

occasionally.  *See id.* at 136.  Finally, the analyst found no manipulative, visual, communicative,

or environmental limitations.  *See id.* at 136-37.


### 4. Hospital records

The record also contains the results of various tests performed at Canton-Potsdam

Hospital.  A CT scan of Plaintiff's pelvis performed on February 11, 2005, showed diverticulosis

of the sigmoid colon, as well as degenerative changes in the spine.  *See* Tr. at 157.  Images of

Plaintiff's abdomen showed a sliding hiatal hernia with no signs of any definite acute

abnormalities.  *See id.* at 158.  Finally, a CT scan of his abdomen showed atherosclerosis of the

aorta, but no acute disease.  *See id.* at 156.


### III. DISCUSSION

**A.      Disability determination**

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI

disability benefits must establish that "he is unable to engage in any substantial gainful activity

by reason of any medically determinable physical or mental impairment which can be expected to

result in death or which has lasted or can be expected to last for a continuous period of not less

than twelve months."  42 U.S.C. § 1382c(a)(3)(A).  In addition, the plaintiff's

-8-

> physical or mental impairment or impairments [must be] of such
> severity that he is not only unable to do his previous work but
> cannot, considering his age, education, and work experience,
> engage in any other kind of substantial gainful work which exists
> in the national economy, regardless of whether such work exists in
> the immediate area in which he lives, or whether a specific job
> vacancy exists for him, or whether he would be hired if he applied
> for work. . . .

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. §§ 404.1520 and

416.920, to evaluate disability insurance and SSI disability claims.

> First, the [Commissioner] considers whether the claimant is
> currently engaged in substantial gainful activity.  If he is not, the
> [Commissioner] next considers whether the claimant has a "severe
> impairment" which significantly limits his physical or mental
> ability to do basic work activities.  If the claimant suffers such an
> impairment, the third inquiry is whether, based solely on medical
> evidence, the claimant has an impairment which is listed in
> Appendix 1 of the regulations.  If the claimant has such an
> impairment, the [Commissioner] will consider him disabled
> without considering vocational factors such as age, education, and
> work experience . . . . Assuming the claimant does not have a listed
> impairment, the fourth inquiry is whether, despite the claimant's
> severe impairment, he has the residual functional capacity to
> perform his past work.  Finally, if the claimant is unable to perform
> his past work, the [Commissioner] then determines whether there
> is other work which the claimant could perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see also* 20 C.F.R. §§ 404.1520, 416.920.

The plaintiff has the burden of establishing disability at the first four steps.  However, if

the plaintiff establishes that his impairment prevents him from performing his past work, the

burden then shifts to the Commissioner to prove the final step.  *See Berry*, 675 F.2d at 467.

**B.      Scope of review**

In reviewing the Commissioner's final decision, a court must determine whether the Commissioner applied the correct legal standards and whether there is substantial evidence in the record as a whole to support that decision.  *See Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)) (other citations omitted).  A reviewing court, however, may not affirm an ALJ's decision if it reasonably doubts that the ALJ applied the proper legal standards, even if it appears that there is substantial evidence to support that decision.  *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) (citations omitted).  In addition, an ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports his decision.  *See Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984) (citation omitted).

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision.  *See* 42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991) (citations omitted).  "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion . . . .'"  *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (quotation omitted).  "It is more than a mere scintilla or a touch of proof here and there in the record."  *Id.*

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Id.* (citations omitted).  "However, a reviewing court cannot substitute its interpretation

-10-

of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision." *Lewis v. Comm'r of Soc. Sec.*, No. 6:00 CV 1225, 2005 WL 1899399, *1 (N.D.N.Y. Aug. 2, 2005) (citations omitted).

In this case, the ALJ found that (1) Plaintiff had not engaged in substantial gainful activity since the alleged onset date; (2) Plaintiff's degenerative lumbar disc disease was considered "severe" based on the regulations; (3) Plaintiff's impairment did not meet or medically equal any of the listed impairments in Appendix 1, Subpart P, Regulation No. 4; (4) Plaintiff's allegations regarding his limitations were not totally credible; (5) Plaintiff retained the RFC to perform light work;[1] (6) Plaintiff was unable to perform his past relevant work; (7) Plaintiff was an individual closely approaching advanced age; (8) Plaintiff had a high school education; (9) Plaintiff had no transferable skills from any past relevant work; and (10) based on Plaintiff's RFC, age, education, and work experience, the Medical-Vocational Guidelines directed a conclusion of "not disabled." *See* Tr. at 19.

Plaintiff takes issue with a number of the ALJ's findings and her ultimate conclusion of non-disability. The Court will address each of Plaintiff's arguments in turn.

### 1. Severity

Step two of the sequential evaluation process requires a determination as to whether the

---

[1] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

claimant has a severe impairment which significantly limits his physical or mental ability to do basic work activities. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c). The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b). Age, education, and work experience are not evaluated in determining if the impairment or combination of impairments is severe. *See* 20 C.F.R. §§ 404.1520(c)(, 416.920(c).

The severity analysis does no more than "screen out *de minimis* claims." *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995) (citation omitted). If the disability claim rises above the *de minimis* level, then further analysis is warranted. *See id.* Where a claimant alleges multiple impairments, the ALJ must consider the combined effects of all impairments, regardless of whether any impairment, if considered separately, would be of sufficient severity. *See* 20 C.F.R. §§ 404.1523, 416.923; *Dixon*, 54 F.3d at 1031.

Plaintiff claims that the ALJ erred by failing to find that his leg pain was severe. *See* Plaintiff's Brief at 16-17. For support, Plaintiff points to progress notes from Dr. Berk, which document Plaintiff's complaints about pain radiating down his leg. *See id.* at 17. Plaintiff also cites the progress notes from his physical therapy sessions. *See id.*

First, the Court notes that Plaintiff failed to identify leg pain as a disabling condition when identifying the illnesses, injuries, or conditions that limited his ability to work. *See* Tr. at 53. Instead, Plaintiff listed only degenerative disc disease and arthritis as his disabling conditions. *See id.*

Second, Dr. Berk's progress notes primarily document Plaintiff's subjective complaints. Moreover, one of the notes that Plaintiff cites states that Plaintiff reported that his right leg "feels

-12-

great."  *See* Tr. at 103.  The Court further notes that Dr. Berk's most recent progress note from March 7, 2005, stated that Plaintiff was working on a home renovation project, albeit slowly, and that he was trying to participate in a fitness program.  *See id.* at 180.

Third, although Plaintiff points to several progress notes that document physical therapy sessions, Plaintiff successfully completed his treatment goals.  *See id.* at 110-33, 140-47.

It is Plaintiff's burden to present evidence establishing severity.  *See* 20 C.F.R. § 404.1512(a), (c) ("[The claimant] must provide medical evidence showing that [he] ha[s] an impairment(s) and how sever it is during the time [he] say[s] that [he] [is] disabled.").  In this case, Plaintiff failed to present evidence establishing that his leg pain significantly limits his ability to do basic work activities.  *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).  Therefore, the Court finds that there is substantial evidence in the record to support the ALJ's finding regarding this issue and, therefore, affirms that determination.

### 2. Treating physician

The medical opinions of a treating physician are given "controlling weight" as long as they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and are not inconsistent with other substantial evidence contained in the record.  20 C.F.R. §§ 404.1527(d)92), 416.927(d)(2).  Even if substantial evidence contradicts the treating physician's opinion, which is thus not controlling, that opinion still may be entitled to significant weight "because 'the treating source is inherently more familiar with a claimant's medical condition than are other sources.'"  *Santiago v. Barnhart*, 441 F. Supp. 2d 620, 627 (S.D.N.Y. 2006) (quoting *Gonzalez v. Callahan*, No. 94 Civ. 8747, 1997 WL 279870, at *11 (S.D.N.Y.

May 23, 1997) (citing *Schisler v. Bowen*, 851 F.2d 43, 47 (2d Cir. 1988))).  However, if the treating physician's opinion is not controlling, the proper weight that the ALJ gives to that opinion depends upon the following factors: (1) the length of the treatment relationship and frequency of examinations; (2) the nature and extent of the treatment relationship; (3) the medical evidence in support of the opinion; (4) the consistency of the opinion with the record as a whole; (5) whether the opinion is from a specialist; and (6) any other factors that tend to support or contradict the opinion.  *See* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  Omission of this analysis is considered failure to apply the proper legal standard and is grounds for reversal of the Commissioner's determination.  *See Schaal v. Apfel*, 134 F.3d 496, 505 (2d Cir. 1998).

Plaintiff argues that the ALJ erred by assigning less than controlling weight to Dr. Berk's opinion as set forth in the Medical Source Statement dated March 7, 2005 ("March 2005 opinion").  *See* Plaintiff's Brief at 13-16.  The record shows that the ALJ did, in fact, assign "less than considerable weight" to Dr. Berk's opinion.  *See* Tr. at 17.  For the following reasons, the Court finds that substantial evidence in the record did not support the ALJ's determination in this regard and that the ALJ erred by failing to contact Dr. Berk.

Although the ALJ acknowledged that Dr. Berk was Plaintiff's treating physician, he noted that Dr. Berk's examinations of Plaintiff in October and December 2004 showed "minimal objective findings."  *See id.*  Indeed, on October 25, 2004, Dr. Berk noted "mild tenderness over the lumbar vertebrae without paraspinal muscle tenderness or spasm;" normal SI joints; full range-of-motion "with minimal pain on terminal movements;" and a negative straight leg raise test.  *See id.* at 152.  He also noted that the motor strength, sensation, and deep tendon reflexes in Plaintiff's lower extremities were intact.  *See id.*  Similarly, on December 6, 2004, Dr. Berk noted

mild tenderness over the lumbar vertebrae, mild paraspinal muscle tenderness, no spasms, a little tenderness in the SI joints; full range-of-motion with minimal pain on terminal movements; and a negative straight leg raise test. *See id.* at 153. Dr. Berk also noted that Plaintiff's motor strength and sensation were intact, and he had normal left deep tendon reflexes. *See id.*

However, the examination that Dr. Berk performed on March 7, 2005, revealed contrary results, suggesting that Plaintiff's condition had worsened. *See* Tr. at 180. At that time, Dr. Berk noted that Plaintiff exhibited tenderness over the L1 through L4 regions of the spine, as well as in the sciatic notch on the right side. *See id.* He also stated that Plaintiff's straight leg raising test was positive bilaterally and that Plaintiff's peripheral reflexes were 2+ and symmetrical; however, he also noted that Plaintiff could not forward bend without "considerable discomfort" and exhibited "severely limited mobility of the spine in all directions." *See id.* Therefore, although the examinations that Dr. Berk performed in October and December 2004 showed limited clinical findings, the examination that he performed on March 7, 2005, suggested that Plaintiff's condition had worsened.

The ALJ also found that Dr. Berk failed to explain on what evidence he relied to determine that Plaintiff had certain postural, manipulative, and environmental limitations. *See* Tr. at 17. Indeed, Dr. Berk identified no evidence to support the limitations in question. *See id.* at 176-78. However, under the regulations, an ALJ has an obligation to develop the record, which includes recontacting a claimant's treating physician if the information received from that physician or other medical source is inadequate to determine whether the claimant is disabled. *See Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996) (citing 20 C.F.R. § 404.1512(e)). The regulations provide that

-15-

> [w]e will seek additional evidence or clarification from your
> medical source when the report from your medical source contains
> a conflict or ambiguity that must be resolved, the report does not
> contain all the necessary information, or does not appear to be
> based on medically acceptable clinical and laboratory diagnostic
> techniques.

20 C.F.R. § 404.1512(e)(1).

This is not a mere salutary requirement; the opinion of a treating physician plays a central role in evaluating Social Security claims.  "'[A] treating source's opinion on the issue(s) of the *nature and severity of [a claimant's] impairments*' will be given 'controlling weight' if the opinion is 'well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'"  *Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003) (quoting 20 C.F.R. § 404.1527(d)(2)) (other citations omitted).  Moreover, the duty to develop the record faithfully exists even in instances where a claimant is represented, owing from the fact that such proceedings are not viewed as adversarial in nature.  *See Gecevic v. Sec'y of Health & Human Servs.*, 882 F. Supp. 278, 287 (E.D.N.Y. 1995) (quotation and other citations omitted).

In light of the fact that Dr. Berk is the only treating physician in the record and the only medical source who rendered a detailed opinion about Plaintiff's abilities, the Court concludes that the ALJ should have contacted Dr. Berk so that Dr. Berk could supply all of the necessary information to support his opinion.  Accordingly, because the ALJ failed to fulfill her duty to develop  the record, the Court is unable to find that there is substantial evidence to support the ALJ's determination and, therefore, the Court must remand the matter.  *See Geracitano v. Callahan*, 979 F. Supp. 952, 957 (W.D.N.Y. 1997) (holding that the ALJ erred by failing to

-16-

investigate the incomplete medical evidence that the longstanding treating physician had provided).

### 3. Credibility

When the evidence demonstrates a medically determinable impairment, "subjective pain may serve as the basis for establishing disability, even if such pain is unaccompanied by positive clinical findings or other 'objective' medical evidence[.]"  *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979) (citations omitted).  The ALJ, however, retains discretion to assess the credibility of a claimant's testimony regarding disabling pain and "to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant."  *Id.*  When a claimant's testimony regarding pain suggests a greater severity of impairment than the objective medical evidence shows, the ALJ must consider the following factors in evaluating a claimant's symptoms and complaints of pain: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication that the claimant takes to alleviate pain or other symptoms; (6) any measures the claimant uses to relieve pain or other symptoms; and (7) other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms.  *See* 20 C.F.R. § 404.1529(c)(3)(i)-(vii), 416.929(c)(3)(i)-(vii).  If there is substantial evidence in the record to support the Commissioner's findings, "the court must uphold the ALJ's decision to discount a claimant's subjective complaints of pain."  *Aponte v. Sec'y, Dep't of Health & Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984) (citations omitted).

Plaintiff argues that the ALJ erred by finding him less than totally credible.  *See* Plaintiff's Brief at 20-22.  Specifically, Plaintiff claims that the ALJ failed to apply the factors set forth in the regulations and failed to consider his work history.  *See id.*

In her decision, the ALJ reviewed Plaintiff's testimony and determined that he was not entirely credibly.  *See* Tr. at 17.  In making this determination, the ALJ discussed the factors set forth in the regulations.  *See id.*  The ALJ noted Plaintiff's daily activities, which included trying to do housework such as doing dishes, sweeping, and vacuuming.  *See id.* at 17, 197.  The ALJ also pointed out that Plaintiff was completing a home renovation project, albeit slowly, which Dr. Berk noted in his March 7, 2005 progress note.  *See id.* at 17, 180.

The ALJ also discussed the location, duration, frequency, and intensity of Plaintiff's pain and other symptoms.  *See* Tr. at 16-17.  The ALJ recognized that Plaintiff experienced pain in his back, as well as headaches, hypertension, and concentration problems.  *See id.*

The ALJ reviewed precipitating and aggravating factors, specifically Plaintiff's claim that standing or sitting more than ten minutes, walking on an incline or stairs, or lifting more than ten pounds increased his back pain.  *See* Tr. at 17.  The ALJ also pointed out that the record indicated that Plaintiff experienced an increase in back pain after squatting and lifting a mounted tire while at work.  *See id.* at 17, 119.  The ALJ noted, however, that the record suggested that Plaintiff's symptoms were reduced with light or sedentary activity.  *See id.* at 17.  Indeed, Dr. Berk noted on several occasions that Plaintiff's job aggravated his condition and that his condition improved when he was away from his job.  *See id.* at 105-08.

The ALJ discussed the type and effectiveness of medication that Plaintiff took to alleviate pain or other symptoms.  *See id.* at 17.  The ALJ pointed out that Plaintiff took no medication

-18-

other than Tylenol with codeine.  *See id.*  At the hearing, Plaintiff testified that he took only

Tylenol with codeine if he "absolutely had to," which on average was one time per week.  *See id.*

at 195.  Plaintiff stated that "it help[ed] some."  *See id.*

The ALJ reviewed the treatment, other than medication, that Plaintiff received for relief

of pain or other symptoms.  *See* Tr. at 17.  The ALJ noted that Plaintiff underwent physical

therapy and was given a weight lifting program.  *See id.* at 15, 17.  The ALJ also pointed out that

Plaintiff was trying to participate in a fitness program.  *See id.* at 17.  Indeed, Dr. Berk's March 7,

2005 progress note stated that Plaintiff was "currently trying to participate in a fitness program

and hope[d] to become more functional in the future."  *See id.* at 180.

The ALJ also considered measures that Plaintiff used to relieve pain or other symptoms.

*See id.* at 15, 17.  The ALJ noted that Plaintiff had used a TENS unit that provided relief and that

Plaintiff admitted that he did not use a cane.  *See id.* at 15.  She also noted that Plaintiff did not

have a herniated nucleus pulposus and had had no back surgery.  *See id.* at 17.

The ALJ further reviewed Plaintiff's work history.  *See* Tr. at 18.  The ALJ specifically

noted that Plaintiff had past relevant work history as a heavy equipment operator and mechanic's

helper.  *See id.*

The foregoing demonstrates that the ALJ analyzed Plaintiff's credibility in accordance

with the factors set forth in the regulations and that there is substantial evidence in the record to

support this analysis.  Therefore, the Court affirms the ALJ's decision in this regard.


### 4. Plaintiff's RFC

Plaintiff argues that the ALJ improperly determined his RFC and that the substantial

-19-

evidence in the record did not support that determination.  *See* Plaintiff's Brief at 17-19.

RFC describes what a claimant is capable of doing despite his impairments, considering all relevant evidence, which consists of physical limitations, symptoms, and other limitations which go beyond the symptoms.  *See Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999); 20 C.F.R. §§ 404.1545, 416.945.  "RFC can only be established when there is substantial evidence of each physical requirement listed in the regulations."  *Smith v. Apfel*, 69 F. Supp. 2d 370, 378 (N.D.N.Y. 1999) (citation omitted).

> The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 C.F.R. 404.1545 and 416.945. Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy.

Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, *1 (SSA July 2, 1996). The ALJ then uses the RFC to determine whether the claimant can perform his past relevant work in the national economy.  *See New York v. Sullivan*, 906 F.2d 910, 913 (2d Cir. 1990); 20 C.F.R. §§ 404.1560, 416.960.

In determining Plaintiff's RFC, the ALJ reviewed the medical evidence and then stated the weight she assigned to several opinions.  *See* Tr. at 15-17.  However, the ALJ failed to clarify on what evidence she relied to determine Plaintiff's RFC.

First, the ALJ assigned "some weight" to an opinion that Dr. Berk rendered on April 29, 2004.  *See* Tr. at 16.  As noted, on that date, Dr. Berk opined that Plaintiff was unable to work full-time in a strenuous job that involved heavy lifting and bending.  *See id.*  Although the ALJ found that Dr. Berk's finding of "no strenuous activity" was "consistent with other evidence of

record and with [an RFC] of light work," the ALJ failed to explain why she rejected the portion of Dr. Berk's opinion that Plaintiff was unable to bend.

Second, the ALJ weighed the opinion of the disability analyst. *See* Tr. at 16.  The ALJ stated that she assigned only "little weight" to this opinion because a "non-medical, non-examining source" completed this assessment. *See id.*

Third, as noted, the ALJ gave less than considerable weight to Dr. Berk's March 2005 opinion. *See* Tr. at 16-17.  As previously discussed, the Court is unable to conclude that the ALJ's finding in that regard was proper.

In light of the foregoing, the Court is unable to find that there is substantial evidence in the record to support the ALJ's RFC finding.  It is unclear on what evidence the ALJ relied because she assigned only some weight to Dr. Berk's April 2004 opinion, little weight to the disability analyst's opinion, and less than considerable weight to Dr. Berk's March 2005 opinion.  Moreover, the ALJ failed to point out any specific supporting evidence.  Therefore, the Court concludes that it must remand this matter for a re-evaluation of Plaintiff's RFC.  On remand, the ALJ must provide a narrative describing how the evidence supports each conclusion, citing specific medical facts, e.g., laboratory findings, and nonmedical evidence, e.g., daily activities, observations. *See* SSR 96-8p, 1996 WL 374184, at *7.

### 5. Medical-vocational guidelines

Plaintiff argues that the ALJ improperly used the Medical-Vocational Guidelines (the grids").  *See* Plaintiff's Brief at 19-20.  Plaintiff is apparently asserting that the ALJ erred in using Medical Vocational Rule 202.14, which requires the ability to perform light work, because he is

unable to perform even sedentary work.  *See id.*

When a claimant is able to demonstrate that his impairments prevent him from returning to his past relevant work, the burden shifts to the Commissioner at step five to prove that a job exists in the national economy that the claimant is capable of performing.  *See Curry v. Apfel*, 209 F.3d 117, 122 (2d Cir. 2000) (quotation and other citations omitted); 20 C.F.R. §§ 404.1560(c), 416.960(c).  Work exists in the national economy when it exists in significant numbers either in the region where the claimant lives or in several other regions in the country. *See* 20 C.F.R. §§ 404.1566(a), 416.966(a).  In making this determination, the ALJ may apply the grids or consult a vocational expert.  *See Rosa v. Callahan*, 168 F.3d 72, 78 (2d Cir. 1999); 20 C.F.R. pt. 404, subpt. P, App. 2.  If the claimant's "characteristics match the criteria of a particular grid rule, the rule directs a conclusion as to whether he is disabled."  *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996).  However, if a claimant suffers from non-exertional impairments that "'significantly limit the range of work permitted by his exertional limitations,'" the ALJ should elicit testimony from a vocational expert to determine if jobs exist in the economy that the claimant can still perform.  *Id.* (quoting [*Bapp v. Bowen*, 802 F.2d 601,] 605-06 [(2d Cir. 1986)]); 20 C.F.R. §§ 404.1566(e), 416.966(e).  The vocational expert may testify about the existence of jobs in the national economy and about the claimant's ability to perform any of those jobs given his functional limitations.  *See Colon v. Comm'r of Soc. Sec.*, No. 6:00CV0556, 2004 WL 1144059, *6 (N.D.N.Y. Mar. 22, 2004) (citation omitted).

In this case, the ALJ consulted the grids and found that Plaintiff was not disabled.  *See* Tr. at 18.  However, because the Court is remanding this matter for a re-evaluation of Dr. Berk's opinion and for a re-evaluation of Plaintiff's RFC, it is unable to conclude that the there is

substantial evidence in the record to support the conclusion that the ALJ reached after consulting the grids.

## IV. CONCLUSION

After carefully reviewing the entire file in this case, the parties' submissions, and the applicable law, and for the reasons stated herein, the Court hereby

**ORDERS** that the Commissioner's final decision denying disability benefits is **REVERSED** and this matter is **REMANDED** to the Commissioner, pursuant to sentence four of 42 U.S.C. § 405(g),[2] for further proceedings consistent with this Order; and the Court further

**ORDERS** that, because the referral of this matter to a magistrate judge under Local Rule 72.3 has been **RESCINDED**, any appeal that a party takes from this Order shall be to the Court of Appeals for the Second Circuit.

**IT IS SO ORDERED.**

Dated: July 16, 2008
　　　　Syracuse, New York

_____
Frederick J. Scullin, Jr.
Senior United States District Court Judge

---

[2] Sentence four provides that "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the case for a rehearing."  42 U.S.C. § 405(g).